##### AT THE

## JANUARY TERM 1866, AT BOSTON.

###### PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN, } Justices.
Hon. HORACE GRAY, Jr.,
Hon. JAMES D. COLT,

## ESSEX COUNTY.

### John J. Marsh & another *vs.* Edward A. Hammond.

The entry of "neither party" in an action is not evidence of a settlement or adjudication of the matters involved therein, and is no bar to a future action between the same parties and for the same cause.

Evidence that an insolvent debtor, a few months before the making of a conveyance which is alleged to have been fraudulent, represented to certain of his creditors that he should not be able to pay his debts to them at maturity, is admissible in favor of his assignees, in an action brought by them to set aside the conveyance.

Evidence that a person cannot write very well, and that his nephew, who had been his confidential clerk for several years, was in the habit of writing letters for him, is sufficient to authorize the introduction in evidence of letters appearing to be on his business, and written in his name by such clerk, for the purpose of proving his insolvency.

If an insolvent debtor has testified, in a writ of entry brought by his assignees to set aside a conveyance of real estate made by him on the day before removing with a stock of goods out of the Commonwealth, that the conveyance was not made to defraud creditors, and that he had no such intent in removing with his goods from the Commonwealth, letters written by him or by his authority shortly after reaching the place of his destination, and

tending to show that he had such fraudulent intent, are admissible in evidence for the purpose of contradicting him.

If the tenant in such writ of entry has testified that after he was summoned to appear as a witness before the court of insolvency, and before obeying the summons, he requested and had a meeting with the insolvent debtor out of this commonwealth, and there received from him a letter addressed to another person, and that he did not know and had no belief whether it was sealed or unsealed, or whether he saw or heard or knew the contents of it, and his appearance and mode of answering are such as to make the weight and credibility of his testimony, in the opinion of the presiding judge, a question for the jury and there is evidence tending to show that he delivered the letter to the person to whom it was addressed, and its contents, if known by the tenant, had a tendency to prove the alleged fraud on his part, the question whether or not he knew them may be submitted to the jury.

WRIT OF ENTRY brought by the assignees of George W. Lee, an insolvent debtor, to recover four parcels of land in Haverhill which were mortgaged by Lee to the tenant. At the trial in this court, before *Gray*, J., the jury returned a verdict for the demandants, under rulings and instructions which are sufficiently stated in the opinion ; and the case was reported for the determination of the whole court.

*D. Saunders, Jr. & E. Avery*, for the tenant.

*B. F. Brooks & S. B. Ives, Jr.*, for the demandants.

CHAPMAN, J. The first question is as to the refusal of the presiding judge to instruct the jury that in a former action between these parties, precisely like the present, the entry " N. P." was evidence of an adjudication and settlement of all matters involved in this action. But such an instruction would have been erroneous. The entry " N. P." does not indicate any adjudication. It means nothing more than that neither party appears further in the action. This is equivalent to a nonsuit and default by consent, after which no judgment can be rendered by the court. As evidence of an agreement of the parties it cannot be interpreted to include more than an abandonment of the action ; and in no sense can it be regarded as a bar to a future action, or as evidence to affect the present action. It was properly excluded.

In order to discuss the other questions properly, it is necessary to state the point at issue. George W. Lee had on the 17th of October 1861 executed to the tenant four mortgages. On the 9th of the following November proceedings in insolvency were instituted against him by his creditors, and the demandants

Marsh & another *v*. Hammond.

were appointed assignees of his estate, and have brought this action to recover the mortgaged premises on the ground that the mortgages were fraudulent as against creditors.    The allegation and denial of this fraud formed the issue on trial.    In order to establish the fraud of Lee, the mortgagor, it was necessary to prove his fraudulent intent, and in establishing this it was proper to prove his pecuniary condition.    The evidence that he obtained an extension of his notes about to fall due the preceding spring by representations to the holders of them that he should not be able to pay them at maturity, tended to prove that he knew himself to be insolvent at that time, and the objection to it is groundless.

Several letters which purported to be written in behalf of Lee by one Hall were offered in evidence and objected to.    They were written prior to the execution of the mortgage, and, if written by the direction of Lee, tended to prove his insolvency. One objection to them was, that there was not sufficient evidence to be submitted to the jury that Hall had authority from Lee to write them.    The evidence on this point was that Hall was a nephew of Lee and was brought up by him ; that Lee had carried on business as a dealer in shoes in Haverhill till about the 18th of October, when he removed to Chicago, where he had sent his stock of goods ; that both in Haverhill and at Chicago, Hall was employed by him in his business, and was his confidential clerk ; and that Lee did not write very well, and Hall wrote many of his letters.    Two of the letters were written to Faxon, Elms & Co., of Boston, who were his creditors They were dated in July 1861, and proposed terms of com· promise, and the last one contained cash and a note signed by Lee's own hand for the balance of the debt.    Three others were written to Bulkley & Lapham of New York, creditors of Lee, dated in August 1861.    The first two asked for terms of extension, and the last one contained a check for a part of the debt, and a note for the balance, both signed by Lee's own hand. All this evidence tended to prove that the letters were written by Lee's direction.    It was for the jury to determine whether it was sufficient to prove the fact, and the letters were properly admitted in evidence, to be used as statements of Lee tending to

prove his insolvency, if the jury should be satisfied that they were written by his direction.

The tenant read the deposition of Lee, in which he testified that the mortgage was made to the tenant in good faith to secure a note of $20,000; that the tenant lent him $19,200, and he owed the tenant the note; that the mortgage was not made to defraud creditors, and that he had no such intent either in making the mortgage, in removing his goods to Chicago, or in going there himself. He stated several circumstances to corroborate this general statement. He also stated that he wrote to most of his principal creditors after he had come to Chicago, and after he had found that he could make no collections from his southern debtors, to give him an extension of two years. To contradict this statement on the subject of fraud, the demandants offered a letter dated Chicago, October 22d 1861, addressed to Howe Brothers of Boston, creditors of Lee, and three others of similar tenor addressed to other creditors, asking for an extension of two years; but containing statements tending to contradict his testimony, and offering to pay them if they would take real estate at what it was worth eighteen months previous. They were in the handwriting of Hall; and were signed, as some of the previous letters were, " G. W. Lee," and under it " H." The evidence above mentioned was sufficient to authorize the reading of the letters to the jury, with the instructions given that if Hall was authorized to write them, which was a question for the jury, they were admissible for the purpose of contradicting Lee and affecting his credibility, but for no other purpose.

The demandants offered, for the same purpose, another letter to Samuel Elliot of Haverhill, dated Chicago, October 28. It was in Hall's handwriting, but it contained a mortgage to Elliot, of the same date, signed by Lee, so that there was sufficient evidence to be submitted to the jury that this was written by Lee's direction. The language of the letter taken in conection with the contents of the mortgage tended to show that Lee regarded the land mortgaged to the tenant as being then subject to be taken by his creditors, and thus tended to contradict his testimony.

The tenant himself was a witness, and testified that after he was summoned to appear before the court of insolvency, and before he obeyed the summons, he requested Lee, who was then at Chicago, to meet him at Albany. He made this request, because he did not think he could get Lee to come to Boston. They met at Albany, November 11th 1861.

He stated that he there received from Lee a letter addressed to the demandant Marsh; he did not know and had no belief whether the letter was sealed or unsealed, or whether he saw or heard or knew of its contents. His testimony upon the question of his knowledge of its contents, was given in the course of a long cross-examination in which his appearance and mode of answering were such as to make the weight and credibility of his testimony upon this point, in the opinion of the presiding judge, a question for the jury.

It appeared that a letter was left at Marsh's office about the middle of November, which the jury might properly infer was the letter above mentioned; that Marsh was then acting as counsel for the petitioning creditors against Lee; that soon afterwards he met the tenant at the court of insolvency, and the tenant said to him that he had sent him a letter which Lee had given him for him. The tenant was at that time obviously interested in suppressing any inquiry into the validity of his mortgage, especially if it was fraudulent. If the creditors or their attorney could be persuaded to give Lee further time, it would tend to suppress such inquiry. The letter of Lee not only asks Marsh to endeavor to persuade them to this course, but to act as Lee's attorney in the matter, promising him a compensation for it, and further requests him to treat the letter as confidential. The circumstances under which the letter was written and conveyed to Marsh, taken in connection with its contents, were sufficient to authorize the jury to infer that it was written by the defendant's procurement for the purpose which the letter indicates, and the letter was properly submitted to them as tending to establish the fraud alleged. The court are of opinion that all the evidence objected to was properly admitted, and that the instructions respecting it were carefully guarded.

*Judgment on the verdict.*